# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENT G. SAVAGE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-15-1194-HE |
| | ) |
| MARY FALLIN, et al., | ) |
| | ) |
|    Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 generally alleging violations of his constitutional rights. United States District Judge Joe Heaton referred this matter to the undersigned magistrate judge for preliminary proceedings pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Because Plaintiff has failed to state a claim upon which relief may be granted, this action should be summarily **DISMISSED**.

### I.    PLAINTIFF'S COMPLAINT

Plaintiff's Complaint names eight defendants sued in both their individual and official capacities. Plaintiff identifies the defendants as follows: Defendant Mary Fallin, Governor of the State of Oklahoma; Defendant Robert Patton, Director of the Oklahoma Department of Corrections (DOC); Defendant Jason Bryant, Warden for James Crabtree Correctional Center (JCCC); Defendant Terry Cline, Commissioner of the Health Department for the State of Oklahoma; Defendant Robert Doke, Fire Marshall of the State of Oklahoma; Defendant Jeffrey Hickman, Speaker of the Oklahoma House of

Representatives; Defendant Brian Bingman, President Pro Tem of the Oklahoma Senate; and Defendant Clark Jolley, Chairman, Oklahoma State Senate Appropriations Committee (ECF No. 1:1-2).

Plaintiff describes the nature of this case:

> Plaintiff is an inmate at the medium security section of James Crabtree Correctional Center (JCCC). He alleges that all Defendants, individually an[d] in collusion, have demonstrated deliberate indifference towards the risk of serious harm to himself, other inmates, prison staff, correctional officers and the public, by failing to take appropriate action to resolve the serious danger resulting from statewide prison overcrowding and understaffing. This violates the 8th Amendment. Defendants have intentionally inflicted emotional distress upon plaintiff, in violations of state and federal law. Monetary damages, declaratory judgment and injunctive relief [are] requested.

(ECF No. 1:3).

In Count I, Plaintiff contends the "Defendants have denied or wrongfully condoned the denial of a safe and healthy environment for Plaintiff." (ECF No. 1:4-25). Plaintiff includes a litany of complaints about the conditions of his confinement, all of which arise, according to Plaintiff, from overcrowding. Plaintiff attributes the overcrowding to the legislature's failure to appropriate sufficient funds to build new prisons or adequately staff existing prisons, to Governor Mary Fallin's opposition to the appropriation of such funds, and to DOC Director Patton's transfer of prisoners from county jails to existing prisons with the express purpose of saving taxpayer money.

In Count II, Plaintiff contends, "Defendants have intentionally inflicted or condoned the intentional infliction of emotional distress" upon him. (ECF No. 1:26-27).

## II. SCREENING REQUIREMENT

As soon as practicable, the Court must review each complaint brought by a prisoner seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). In this case, Plaintiff's Complaint should be dismissed *sua sponte* for failure to state a claim upon which relief may be granted.

## III. ANALYSIS

### A. Defendants Entitled to Immunity

#### 1. Eleventh Amendment Immunity

Plaintiff's official capacity claims for monetary damages brought against all defendants as employees or state officials of the State of Oklahoma must be dismissed, as each defendant is entitled to Eleventh Amendment sovereign immunity. The official capacity claims for damages against all defendants are actually claims against the State of Oklahoma. The Eleventh Amendment bars federal court jurisdiction over a state official acting in his or her official capacity in a suit for monetary damages. *See Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 119 (10th Cir. 1998).

Unless the State unequivocally waives its Eleventh Amendment immunity, a federal court lacks jurisdiction to award monetary damages in a civil rights action. *See Guttman v. Khalsa*, 669 F.3d 1101, 1110 (10th Cir. 2012) ("Although a state may waive

the sovereign immunity granted to it under the Eleventh Amendment, we require a showing of unequivocal intent to do so."). Oklahoma has not waived its sovereign immunity against civil rights claims. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citation omitted) ("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court."). The Eleventh Amendment bars any claim for monetary relief against Defendants in their official capacities. *See Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013) ("[I]mplicit in enactment of the Eleventh Amendment is that state sovereign immunity ordinarily bars federal-court jurisdiction over private suits against a state by citizens of the state.").

Eleventh Amendment sovereign immunity does not apply to the extent Plaintiff is seeking prospective injunctive relief. *See Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1197 (10th Cir. 1998) (suit for prospective injunctive relief against a state official acting in her official or individual capacity may still be brought in federal court pursuant to the *Ex parte Young* doctrine). But as discussed in further detail below, Plaintiff has failed to state a claim upon which relief may be granted against any defendant. Although he has generally described the ills resulting from overcrowded prison conditions, he has not alleged that *his* conditions of confinement have resulted in actual harm to him. At best, Plaintiff has described conditions resulting in his personal discomfort and inconvenience. But "the Constitution does not mandate comfortable prisons," and prisons generally are not "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349-50 (1981).

For these reasons, all claims brought against Defendants in their official capacities should be dismissed, regardless of the relief sought.

Because the Eleventh Amendment involves sovereign immunity, the official-capacity claims should be dismissed "without prejudice" rather than "with prejudice." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n. 9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds … must be without prejudice.").

### 2. Legislative Immunity

The individual capacity claims brought against Defendants Hickman, Bingman and Jolley are based solely on their positions in the Oklahoma State Legislature. Plaintiff's claims are based on the budgetary allotment of funds for the DOC which are insufficient according to Plaintiff. Plaintiff makes the same allegation against each defendant. He claims that each defendant is "well aware" of the conditions of confinement in Oklahoma prisons, but has failed to exercise his discretion as a member of the legislature "to take effective and adequate measures to cause the state Legislature to appropriate enough money for DOC to provide constitutional conditions, or to reduce the inmate population to come into constitutional compliance." (ECF No. 1: 31).

Plaintiff makes similar claims against Defendant Fallin, faulting her for not designating money from the "Rainy Day Fund" to alleviate overcrowding or to "prompt[] the state Legislature to appropriate adequate funding for the DOC[.]" (ECF No. 1:28).

5

According to Plaintiff, all four of these defendants are motivated by political and monetary concerns.

Plaintiff's claims against these defendants should be dismissed with prejudice. Legislators are entitled to absolute immunity from suit brought against them pursuant to 42 U.S.C. § 1983, based on their discretionary legislative actions. *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). And, because "absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity,'" absolute immunity is extended to members of the executive branch when they are performing legislative acts. *Id.* at 55 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). *See also Smiley v. Holm*, 285 U.S. 355, 372-373 (1932) (recognizing that a Governor's signing or vetoing of a bill constitutes part of the legislative process).

Absolute immunity is necessary because exercise of legislative or executive discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. *See Spallone v. United States*, 493 U.S. 265, 279, (1990) (noting, in the context of addressing local legislative action, that "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"); *see also Tenney*, 341 U.S. at 377 (state legislators). Thus, all claims against Defendants Hickman, Bingman, Jolley and Fallin should be dismissed with prejudice.

## B. Failure to State a Claim Upon Which Relief May Be Granted

To state a claim upon which relief may be granted, procedural rules require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must also include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint fails to state a claim upon which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation and footnote omitted). But bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 678 (internal citations and quotations omitted). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Id.* at 679.

Additionally, a plaintiff alleging violations of his civil rights cannot rely on the doctrine of *respondeat superior*. Rather, a plaintiff must allege sufficient facts to

7

demonstrate that each defendant personally participated in the alleged constitutional violations. "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

1. **Count I**

Plaintiff's complaint is primarily devoted to a discussion of the *potential* danger posed by overcrowded prisons. He recites several concrete examples of incidents resulting in injury to or death of prisoners at JCCC and other Oklahoma prisons. Plaintiff theorizes these incidents were the result of prison overcrowding. But none of these examples involve Plaintiff, himself, and Plaintiff has failed to allege sufficient facts to raise a plausible right to relief above the speculative level, even assuming that all the allegations in the complaint are true.

Plaintiff has failed to state a claim that Defendants have been deliberately indifferent to serious, inhumane conditions of confinement:

> In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement … the deprivation alleged must be objectively sufficiently serious … depriving the inmate of the minimal civilized measure of life's necessities.

*Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (internal quotations and citations omitted).

At best, Plaintiff's complaints involving the actual conditions of *his* confinement rise only to the level of discomfort or inconvenience:

- Despite DOC policy allowing prisoners to exchange their clothing for new clothing every six months for normal wear and tear, Plaintiff's request for new clothing was denied;

- Food portions have decreased;

- There are mice in the kitchen;

- There are not enough correctional officers in the chow hall during mealtimes;

- The Health Services Department is not open on weekends or after 5:00 p.m.;

- Prisoners must stand outside in the "pill line" to receive their medicine;

- The law library is often closed on days when it is scheduled to be open, and the law library is the only place prisoners can obtain grievance forms;

- Plaintiff has experienced delays in having unspecified issues addressed by his case manager or unit manager.

None of these complaints or any other complaints alleged by Plaintiff related to his conditions of confinement rise to the level of a constitutional violation, as none of these conditions are "sufficiently serious" or deprive Plaintiff of the minimal civilized measure of life's necessities.

Moreover, none of the facts Plaintiff alleges demonstrate that any discretionary policy decisions made by these defendants were made with the requisite subjective state of mind regarding JCCC in general or Plaintiff in particular:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

> drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In the portion of his complaint entitled "Personal Involvement," Plaintiff alleges Defendant Patton, as Director of DOC, was "personally involved" because he "made the decision to transfer over 3,100 county jail inmates into DOC operated prisons" resulting in the overcrowding about which Plaintiff complains. (ECF No. 1:29). Defendant Cline, Commissioner of the State Health Department, was personally involved, according to Plaintiff, because the health department "has not taken appropriate action to enforce laws," including the ratio of sinks and toilets to inmates. According to Plaintiff, his health has been "endangered" as a result. (ECF No. 1: 29-30). Defendant Doke, the State Fire Marshal, was personally involved because, according to Plaintiff, he has failed to enforce unspecified laws, endangering Plaintiff's health and safety as a result. (ECF No. 1:30).

According to Plaintiff, all these agency directors were motivated by financial and political concerns. Regardless of motivation, however, any discretionary actions or policy decisions made by these defendants were made in their official capacities. As discussed above at pp. 3-5, these defendants are entitled to Eleventh Amendment immunity for those actions. Moreover, Plaintiff's speculation that actions of these defendants might have "endangered" him does not rise to the level of a constitutional deprivation.

Plaintiff alleges Defendant Bryant was personally involved in the alleged violations based solely on his position as Warden of JCCC. But Plaintiff acknowledged that "Warden Bryant can do little about the problems resulting from overcrowding and understaffing without a large budget increase." (ECF No. 1:29). Therefore, Plaintiff has failed to allege sufficient facts to demonstrate Defendant Bryant has been deliberately indifferent to Plaintiff's health and safety. *Id.*

### 2. Count II: Infliction of Emotional Distress

In Count II, Plaintiff alleges, "Defendants have intentionally inflicted or condoned the intentional infliction of emotional distress upon the Plaintiff." (ECF No. 1:26). Plaintiff's claim to relief is based on "common law," Article 2, Section 9 of the Oklahoma Constitution and the Eighth Amendment to the United States Constitution.

According to Plaintiff, the ills of overcrowding at JCCC are well known to all the defendants, and none of them has taken corrective action. "The realization that neither prison officials, nor state inspectors, nor the state legislature, nor the Governor seem to care, has caused the intentional infliction of emotional distress upon the Plaintiff." (ECF No. 1:26).

Under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999) (mental and emotional distress can constitute a compensable injury in

suits for damages under 42 U.S.C. § 1983 only if plaintiff suffers physical injury in addition to mental or emotional harms) (internal citation and quotation omitted). Plaintiff has not alleged that his emotional distress has resulted in a physical injury. Thus, Plaintiff has failed to state a claim for intentional infliction of emotional distress.

Although Plaintiff has also asserted state law as a basis for this claim, this Court should decline to exercise its jurisdiction over any state-law claims. *See* 28 U.S.C. § 1367(c)(3) (permitting district courts to decline supplemental jurisdiction over state-law claims when all claims over which the court has original jurisdiction have been dismissed).

## RECOMMENDATION

It is recommended that Plaintiff's official capacity claims against all defendants for monetary damages be **DISMISSED WITHOUT PREJUDICE**, based on Eleventh Amendment sovereign immunity. It is recommended that official capacity claims for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted. It is further recommended that all claims against Defendants Fallin, Hickman, Bingman and Jolley be **DISMISSED WITH PREJUDICE** based on their absolute immunity for legislative acts. 28 U.S.C. § 1915A(b)(2). As to individual capacity claims asserted against defendants, it is recommended that these claims be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Finally, it is recommended that the court decline to exercise supplemental jurisdiction over any state law claims asserted by Plaintiff.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Any such objections must be filed with Clerk of the District Court by **December 17, 2015.** Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation **DISPOSES OF ALL ISSUES** referred to the undersigned magistrate judge in this matter.

**ENTERED** on November 30, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE