# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

KENT G. SAVAGE, )
)
        Plaintiff, )
)
vs. ) NO. CIV-15-1194-HE
)
GOVERNOR MARY FALLIN, *et al.*, )
)
        Defendants. )

## ORDER

In this § 1983 case, plaintiff, a prisoner in the custody of the Oklahoma Department of Corrections ("ODOC"), asserts violations of his Eighth Amendment right to safe and humane conditions of confinement. At the time the case was filed, he asserted claims against the Governor of Oklahoma, Oklahoma legislative leaders, and several officials of the ODOC. Various proceedings have since occurred in the case, resulting in the disposition of some claims, and it is useful to briefly recount the history before addressing the pending motions.

Plaintiff filed this case *pro se* in 2015. Following its filing, the case was referred to U. S. Magistrate Judge Shon T. Erwin for initial proceedings. Judge Erwin issued a report recommending that the complaint be dismissed in its entirety on various grounds. That report was adopted by this court and plaintiff's claims were dismissed.

Plaintiff appealed the dismissal to the Tenth Circuit Court of Appeals. The Court of Appeals affirmed in part and reversed in part. It affirmed the dismissal of plaintiff's claims for damages against all the defendants in their official capacities. It affirmed the

dismissal of all claims of any kind against defendants Cline and Doke. It also affirmed the dismissal of all claims against the legislative leaders, on the basis of legislative immunity.

The Circuit reversed this court's dismissal of the claims against Governor Fallin on the basis of legislative immunity, concluding that plaintiff had potentially alleged claims against her based on actions which were administrative, rather than legislative, in nature and hence not barred by legislative immunity. It left open the question of whether claims against her were otherwise stated.

The Circuit also reversed the dismissal as to the claims against ODOC officials Bryant and Patton, concluding that plaintiff had sufficiently alleged a basis for claim against those two defendants.

Following remand, plaintiff, still proceeding *pro se*, sought and received leave to file an amended complaint adding a claim against the current director of ODOC, Joe Allbaugh. The amended complaint, in addition to adding the claims against Allbaugh, also reasserted some of the claims that had been previously dismissed and the dismissal upheld by the Circuit. This court adopted a second Report and Recommendation dismissing again those claims the dismissal of which had been affirmed by the Tenth Circuit.

The result of these proceedings is that, after remand and the amendment, claims remain (or potentially remain) against Governor Fallin and ODOC officials Patton, Bryant, and Allbaugh. The claims assert Eighth Amendment violations based on the defendants' alleged deliberate indifference to a substantial risk of serious harm to plaintiff, due to their failure to address overcrowding and understaffing in the state's correctional facilities.

Plaintiff also asserts a state law claim against these defendants for intentional infliction of emotional distress.[1]

The remaining defendants have moved to dismiss the remaining claims on various grounds or, alternatively, for summary judgment as to them. Judge Erwin issued a third Report and Recommendation as to those motions, recommending that they be treated as summary judgment motions and denied. The defendants have objected to the recommendation, which triggers *de novo* review by this court of the matters to which objection was made.

As a threshold matter, the court concludes the present motions should be viewed as motions to dismiss, rather than for summary judgment, and resolved on that basis. Plaintiff is an incarcerated prisoner, which limits his ability to secure factual materials such as might bear on claims he raises here. Until recently, he has proceeded *pro se* and he secured legal counsel, at least formally, only after his objections to the pending motions were due.[2] Given these circumstances, including the Court of Appeals' conclusion that some claims have been stated and the complexity of certain of the legal doctrines involved, the court concludes it is premature to resolve the present motions as ones for summary judgment.

---

[1] *The court's dismissal of plaintiff's § 1983 emotional distress claim was not directly addressed by the Court of Appeals. To the extent that plaintiff attempts to reassert such a claim in the amended complaint, it will be dismissed for lack of allegations that the emotional distress resulted in any physical injury. See 42 U.S.C. § 1997e(e).*

[2] *Mr. Hellman entered his appearance on August 2, 2017 [Doc. #72]. Plaintiff's responses to the motions, filed May 25, 2017 [Doc. Nos. 68 & 69], purport to be filed* pro se *but appear to have been ghostwritten by counsel.*

Viewing the motions as motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the standard of review is familiar. To survive a motion to dismiss under that rule, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Conclusory allegations are insufficient to state a facially plausible claim. *Id.* at 557. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, dismissal under Rule 12(b)(6) is only appropriate "if the complaint alone is legally insufficient." Brokers' Choice of America, 861 F.3d at 1104-05 (citation omitted).

Plaintiff asserts claims against the four defendants in both their individual and official capacities. To the extent he asserts claims against the defendants in their official capacities, Eleventh Amendment immunity limits the relief that is available. That amendment bars claims for damages or other relief sought directly against a state. However, it is subject to limited exceptions. The exception applicable here was recognized by Ex parte Young, 209 U.S. 123 (1908), which established that a plaintiff may "bring suit against individual states officers in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." Muskogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1166 (10th Cir. 2012). Here, the complaint purports to do that.

To state an Eighth Amendment claim, a plaintiff must allege facts showing that the officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently

4

substantial risk of serious damage to his future health." Farmer v. Brennan, 511 U.S. 825, 843 (1994) (quotations and citation omitted). To succeed on such a claim, plaintiff must demonstrate that the "defendant-officials [] at the time suit was filed . . . knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm, and that they will continue to do so . . . during the remainder of the litigation and into the future." *Id.* at 846.

The Court of Appeals concluded that plaintiff has adequately pleaded claims that defendants Bryant and Patton were deliberately indifferent to overcrowding and understaffing conditions that posed a substantial risk of serious harm. "At this preliminary phase, we conclude that Savage has plausibly pled that he is subjected to overcrowding and staffing conditions that pose a substantial risk of serious harm" sufficient to satisfy the objective component of an Eighth Amendment violation. Savage v. Fallin, 663 Fed. Appx. 588, 593 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994). With respect to the subjective component, the Court stated:

> Savage [has] cited statements made by Patton noting that prison understaffing has created dangerous situation in Oklahoma. He also claims that Patton personally made the decision to transfer inmates from county jails to DOC custody, causing overcrowding at JCCC. As to Bryant, Savage alleges that he has failed to appropriately discipline inmates and cites to public statements from the previous JCCC warden decrying understaffing at the facility.

*Id.* at 594 (citing Farmer, 511 U.S. at 842). As the Court of Appeals has already resolved the issue of pleading sufficiency, the motion to dismiss as to defendant Bryant in his official capacity will be denied.

The same result would follow as to defendant Patton, except that it is undisputed he is no longer the Director of ODOC and therefore no longer acts in an official capacity. He

5

is no longer in a position to implement any injunctive relief to which plaintiff might ultimately show himself entitled. Defendant Allbaugh, the new director, will be substituted in place of Patton as to the official capacity claim, and the motion to dismiss denied as to him in that capacity.

As to the individual capacity claims against Bryant and Patton, the Court of Appeals has already resolved whether a claim is stated against them. They raise the defense of qualified immunity in their present motion, but do so only in a perfunctory manner. Given the fact that a constitutional violation has been pleaded against them and that the pertinent constitutional right appears to have been clearly established with sufficient specificity to apply to the circumstances alleged here, dismissal of the individual capacity claims against Bryant and Patton at this stage is not warranted based on qualified immunity.

Defendants also asserts mootness and failure to exhaust administrative remedies as a basis for dismissal. Those grounds are not ordinarily a basis for dismissal at the pleading stage, where the question is the sufficiency of the allegations of the complaint. Here, the complaint alleges that plaintiff exhausted the administrative remedies which were available to him, and there is no basis on the face of the complaint for concluding plaintiff's claims are moot.[3]

The claims against defendant Allbaugh are in a somewhat different posture. As noted above, an ongoing constitutional violation has been alleged which might warrant an

---

[3] *Further, given the systemic nature of the plaintiff's claims, it is doubtful that a transfer between institutions within the ODOC would, by itself, render his claims moot. However, that question is not appropriate for disposition now.*

award of injunctive relief and Allbaugh, as an official with the authority to implement that relief, may be sued in his official capacity on that basis. But an individual capacity claim, which seeks damages against the state official personally, requires more. There must be some showing that the official knew of the conditions constituting the constitutional violation and either caused the violation or failed to take steps necessary to address it. Here, the complaint includes allegations that Allbaugh knew of the staffing and overcrowding conditions of which plaintiff complains, but there is no allegation identifying steps he took to create the problem or that he failed to take to fix it. There is nothing in the complaint as to Allbaugh that is akin to the alleged conduct relied upon by the Court of Appeals in concluding that claims were stated against Mr. Patton (ordering transfer of inmates from county jails to OCOC custody) or Mr. Bryant (failure to appropriately discipline inmates). Simply knowing of a problem and being somewhere in the supervisory chain, without more, is not enough to state a basis for a damages claim against an official in their individual capacity. Plaintiff has not alleged facts to establish Allbaugh's personal involvement in the asserted violation of federal rights. Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 768 (10th Cir. 2013). Defendant Allbaugh's motion to dismiss will be granted as to the claim against him in his individual capacity.

With respect to the claims against Governor Fallin, the court concludes her motion to dismiss should be granted. The Court of Appeals concluded that legislative immunity did not preclude the possibility of a valid Eighth Amendment claim being asserted against her, on the basis that actions taken, or which should have been taken, of an administrative nature would be outside the scope of legislative immunity. Savage, 663 Fed. Appx. at 591.

7

So the question becomes whether plaintiff has sufficiently alleged facts showing actions of an administrative nature which would support an Eighth Amendment claim. The court concludes he has not.

Beyond purely conclusory allegations of "administrative actions," the complaint does not state a factual basis for concluding the Governor had administrative actions she could have taken to resolve the staffing and related issues to which plaintiff objects. Many of the specific actions identified in the complaint are not administrative in nature but are plainly within the scope of legislative or policy-making immunity. For example, the complaint alleges the Governor won't sign certain bills, doesn't seek a big enough appropriation for ODOC, didn't "prompt" the legislature enough to approve more money, champions laws to make more crimes a felony, and defends the lack of funding to ODOC. It also alleges she appoints too many former prosecutors to the pardon and parole board. All of those actions, if true,[4] are within the scope of legislative immunity and not a basis for personal liability.

The complaint also alleges the Governor refuses to release violent offenders on parole, and that contributes to overcrowding. It is difficult to see how the Eighth Amendment could ever be deemed violated by such conduct. If a convicted prisoner has "no constitutional or inherent right … to be conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1,

---

[4] *The governor's submissions challenge the factual accuracy of all those allegations.*

7 (1979), it makes zero sense that some <u>other</u> prisoner might have a right to insist on that release based on the Eighth Amendment.

Other allegations in the complaint are just conclusory references to the governor's supposed supervisory powers and to unspecified funds she could have used to solve the problem. While the court does not expect the plaintiff to be an expert on state finance, something beyond a general reference to "other funds" is necessary to state a claim in this context.

The complaint does identify Oklahoma's Rainy Day Fund as a fund over which the Governor has control and which she could have used to address conditions at ODOC. The reference is presumably to the Constitutional Reserve Fund created by Okla. Const. Art. 10, § 23. However, that provision of the Oklahoma Constitution makes it abundantly clear that amounts paid from that Fund are in the nature of appropriations and that, as to any use of the Fund for the purposes alleged here, even an emergency declaration by the Governor is not enough, by itself, to access the funds. The Legislature itself must approve the appropriation. *See Id.* § 23(8). As a matter of law, the Governor does not "control" the Constitutional Reserve Fund in any sense that would make her actions "administrative," and her actions as to it are within the scope of legislative immunity referenced above.

In short, the complaint does not allege facts such as would show an Eighth Amendment violation by the Governor.

The motions also seek dismissal of plaintiff's request for a declaratory judgment, contending that relief is inappropriate. The court has "the power, but not the duty, to hear claims for declaratory judgment." <u>Mid-Continent Cas. Co. v. Village of Deer Creek</u>

Homeowners Ass'n, Inc., 685 F.3d 977, 980 (10th Cir. 2012) (citations omitted). Further, in the context of claims against state officials acting their official capacities pursuant to Ex Parte Young, declaratory relief may be sought only where it is prospective in nature and not, in substance, a retroactive determination of liability. As is firmly established, any declaration of past constitutional violations cannot serve as an avenue to the imposition of damages against the state. Edelman v. Jordan, 415 U.S. 651, 666-67 (1974) (labeling relief for past conduct against a state officer as "equitable" does not create an avenue for a claim for damages against the state). However, the court concludes it is premature to decide now whether a declaratory judgment might or might not become appropriate if plaintiff is ultimately able to establish one or more of his claims. The complaint and plaintiff's other submissions do not make clear exactly what relief he seeks. Without more than is present here, there is an insufficient basis for deciding now whether declaratory relief may or may not be appropriate.

For the reasons stated, the Report and Recommendation is adopted in part and declined in part. The motion of defendants Patton, Allbaugh and Bryant [Doc. #62] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the above discussion. The motion to dismiss of Governor Fallin [Doc. #63] is **GRANTED** and the claims against her are **DISMISSED**.

Remaining for resolution are plaintiff's official capacity claims against Allbaugh and Bryant and his individual capacity claims against Bryant and Patton. The state law claim for intentional infliction of emotional distress, which was not substantively addressed by defendants' motions, also remains.

This case will be set for scheduling conference in due course. In addition to such other information as is required for inclusion in the Joint Status Report and Discovery Plan, plaintiff is directed to include in that report a reasonably specific description of the injunctive and declaratory relief he seeks if he prevails on his claims.

**IT IS SO ORDERED**.

Dated this 30th day of March, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE