# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENT G. SAVAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-15-1194-HE |
| | ) | |
| MARY FALLIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, a state prisoner in the custody of the Oklahoma Department of Corrections ("ODOC"), filed this case in 2015 asserting federal claims, pursuant to § 1983, for violation of his Eighth Amendment rights. He also asserts state law claims for intentional infliction of emotion distress. At the outset of the case, it was referred to Magistrate Judge Shon T. Erwin for initial review. Judge Erwin thereafter submitted a Report and Recommendation which recommended that plaintiff's claims be dismissed. This court adopted the Report and Recommendation.

Plaintiff, then proceeding *pro se*,[1] appealed the dismissal to the Tenth Circuit Court of Appeals. The Tenth Circuit affirmed the bulk of the dismissal order but reversed the dismissal as to the claims against Governor Fallin, Jason Bryant (the warden of the facility

---

[1] *Plaintiff was represented by counsel at one point in the case, but that counsel was later permitted to withdraw. The court has since declined plaintiff's requests for appointment of successor counsel but notes that plaintiff's* pro se *submissions reflect considerable skill and ability, for a non-lawyer, in dealing with the various issues.*

where plaintiff was then incarcerated), and Robert Patton (the director of the Oklahoma Department of Corrections).

The case was then re-referred to Judge Erwin, who ordered a Special Report to be filed addressing plaintiff's remaining claims. Thereafter, the remaining defendants filed motions to dismiss or, alternatively, for summary judgment. Judge Erwin recommended that those motions be viewed as ones for summary judgment and that they be denied. Upon objection to the third Report and Recommendation,[2] this court concluded the motions should be viewed as motions to dismiss rather than for summary judgment. So viewed, the motion of Governor Fallin was granted, but the motions of defendants Bryant and Patton were denied. There have since been substitutions of defendants as to the official capacity claims and a dismissal of plaintiff's effort to assert an individual capacity claim against one of the persons later serving as head of the ODOC (Allbaugh).

After giving effect to the decision of the Court of Appeals and the further decisions of this court, the following claims of plaintiff remain for consideration: (1) official capacity claims for injunctive or declaratory relief against the warden of the James Crabtree Correctional Center (formerly Bryant, now Rick Whitten), (2) official capacity claims for injunctive or declaratory relief against the director of ODOC (formerly Patton and Allbaugh, now Scott Crow), (3) individual capacity claims against Bryant based on

---

[2] *Judge Erwin's second Report and Recommendation, which the court adopted, recommended the dismissal of the claims which had been reasserted by plaintiff after the Court of Appeals had affirmed their dismissal.*

violation of plaintiff's Eighth Amendment rights and for intentional infliction of emotional distress, and (4) substantially the same individual capacity claims against Patton.[3]

Defendants have now moved for summary judgment as to all remaining claims and plaintiff has responded. Plaintiff has also filed two motions to compel discovery, to which defendants have responded. Judge Erwin denied petitioner's motions to compel [Doc. #112]. He also issued a fourth Report and Recommendation (the "Report") [Doc. #111] recommending that defendants' motion for summary judgment be granted. Plaintiff has objected to the order denying his motions to compel and has objected to various aspects of the Report.

Where objection is made to a magistrate judge's decision as to a non-dispositive motion, the district judge must modify or set aside any part of the order that is clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). Where objection is made to a magistrate judge's recommendation as to a dispositive motion, the district judge's review is *de novo* as to any matter to which objection was made. Fed.R.Civ.P. 72(b).

Plaintiff objects to the denial of his discovery motions on various grounds. He contends the court's denial of his requests for appointed counsel limited his ability to seek necessary discovery. However, as noted above, plaintiff's *pro se* status has not prevented him from making appropriate arguments and reflect sufficient familiarity with the various

---

[3] *This court initially declined to exercise supplemental jurisdiction over the state law claims against Bryant and Patton, after dismissing the federal claims against them. However, as the federal claims are still outstanding pursuant to the Court of Appeals' order, the prior basis for declining jurisdiction no longer applies and the state law claims remain for resolution.*

procedures. His request for further time to complete discovery was, as noted by Judge Erwin, undercut by defendants' adequate responses to his prior relevant discovery requests. Plaintiff argues he needs additional discovery on various matters to be able to respond adequately to defendants' summary judgment motion. The court generally agrees with Judge Erwin's determination of that issue, essentially that the additional information sought would not otherwise alter the court's disposition of the remaining issues. For example, plaintiff states that he wants more information as to how the state computed the inmate capacity of particular institutions. However, in light of the undisputed evidence of change in the number of inmates actually in the affected institutions, the court's decision would be the same regardless of the specific basis for the referenced changes in inmate capacity.

In any event, the magistrate judge's disposition of the discovery motions is not clearly erroneous or contrary to law. Plaintiff's objection to Order Denying Motions to Compel [Doc. #113] is therefore **OVERRULED**.

With respect to the Report's recommendation that summary judgment be granted for the defendants on the remaining claims, the court concludes that summary judgment for defendants is appropriate on substantially, though not entirely, the basis stated by Judge Erwin.

As noted above, plaintiff's remaining Eighth Amendment claims are those tied to his contention that he is at substantial risk of physical harm by reason of overcrowding and understaffing. Defendants contend that the undisputed facts show that staffing and prisoner numbers at the facilities where plaintiff has been assigned are within constitutional

4

norms and that he is not at substantial risk of physical injury by reason of those circumstances. Specifically, defendants' submissions indicate, and plaintiff does not deny, that the operating capacity of Oklahoma prisons are established by the Board of Corrections. The submissions indicate that, as to the JCCC facility where plaintiff was housed at the time of filing this case, the prisoner count was slightly below its operational capacity (capacity 1313, prisoner count 1312) in late 2015. By 2017, the prisoner count was slightly above its operational capacity (capacity 1175, prisoner count 1201) but plaintiff had been transferred to a different facility by that time.[4] It also appears undisputed that JCCC met all the mandatory standards necessary for accreditation by the American Corrections Association audit in 2015.[5] The audit included a statement that, while noting at least one inmate homicide at the facility (which it concluded was apparently not the result of gang activity or a pattern of institutional violence) that the facility had "very few incidents of assault or violence."

The facility to which plaintiff was transferred in 2017 is the North Fork Correctional Center. The submissions indicate that, at the time of plaintiff's arrival, North Fork had an operational capacity of 2610 and the prisoner count was 1821. The submissions also indicate North Fork was authorized to employ 295 staff positions and 225 of those were budgeted for. Of the budgeted positions, 217 were filled.

---

[4] *Plaintiff questions the relevance of the 2017 statistics in light of his transfer.*

[5] *Plaintiff argues that some of the non-mandatory standards should be, or might later become, mandatory, but does not appear to dispute the facts of compliance as indicated.*

Against this backdrop, the court concludes that there is no dispute of material fact which might translate into a basis for finding a constitutional violation based on a risk of violence or physical injury to plaintiff. As the Court of Appeals noted, overcrowding in and of itself does not support an Eighth Amendment claim, though overcrowding numbers may, at some point, get there. Savage v. Fallin, 663 Fed. Appx. 588, 593 (10th Cir. 2016). And while the prisoner and capacity numbers in the facilities involved here are not optimal by any stretch, "optimal" is not the constitutional standard. Rather, the undisputed facts establish that minimum standards set by the principal accrediting agency were generally met, and that prisoner counts were well within the zone suggested by the various Eighth Amendment cases as meeting constitutional norms.[6] The staffing numbers at the facility where plaintiff is incarcerated, while not optimal, also do not establish a constitutional violation (i.e. 217 onboard staff versus a prisoner count of 1821). Further, while there is always a risk of violence in a prison setting, the facts establish that, during the general time frame during which plaintiff was at JCCC, the incidence of violence there was low.

Plaintiff's claims, and the Report's treatment of them, are addressed more specifically as follows:

---

[6] *Defendants state in their brief (though not in their statement of undisputed facts) that the Oklahoma prison system operated at 111% of its authorized capacity at the time this case was filed, citing the Special Report filed in the case. They also note that, in* Brown v. Plata, *563 U.S. 493 (2011), the Supreme Court was concerned with how to meet a* remedial target *of 137.5% of authorized capacity (i.e. how to get California's system to that point to* meet *constitutional standards.) While there is no hard and fast rule as to capacity percentages in these cases, 111% of authorized capacity does not support an inference of a constitutional violation. For the same reason, the 2017 numbers for JCCC, while slightly in excess of authorized capacity, do not suggest a constitutional violation.*

a. <u>Official capacity claims – JCCC warden</u>. As noted above, plaintiff was transferred from the James Crabtree Correctional Center to North Fork Correctional Center during the pendency of this case. As a result, the Report concluded that plaintiff's official capacity claims against the JCCC warden were moot. Given that the official capacity claims against the warden are for injunctive or declaratory relief, the court agrees that there is no further basis for claim against the JCCC warden. To the extent plaintiff attempts a systemic attack on the Oklahoma penal system generally, rather than just remediation of the conditions where he is, his transfer does not moot his claim. But such claims are more appropriately viewed as involving a claim against the Director of DOC rather than the JCCC warden. Plaintiff's official capacity claims against the warden of JCCC will be stricken as moot.

b. <u>Official capacity claims – ODOC director</u>. The Report also recommends that summary judgment be entered for the defendant Director of ODOC (Crow, formerly Allbaugh and Patton) on the official capacity claims against him. It notes that the undisputed facts establish significant changes in the condition of the prison system as it relates to overcrowding and understaffing, and concludes these changes render plaintiff's Eighth Amendment claims moot. This court disagrees that the changes render plaintiff's claims moot in a strict sense, but they do result in a merits determination in favor of defendants on the basis noted above.

c. <u>Individual claims against Bryant and Patton</u>.

The individual capacity claim against Bryant is premised on the allegation that he did not maintain appropriate disciplinary policies and that it and the staffing conditions

7

created an unconstitutional risk of injury to plaintiff. To succeed on "an Eighth Amendment claim for failure to protect, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" Savage, 663 Fed. Appx. at 592 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The objective component of a § 1983 claim requires plaintiffs to present admissible evidence of a prison official's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." Framer v. Brennan, 511 U.S. 825, 834 (1994). As noted above, the undisputed facts do not establish an Eighth Amendment violation.

The individual capacity claim as to Patton is based on the allegation that he created or contributed to the unconstitutional conditions by transferring prisoners from county jails to the state system, thus increasing prisoner counts at the state facilities. Defendants argue that the transfer of prisoners to the state system is required by law (i.e. those sentenced to state prison rather than to county jails) and that Patton's actions were therefore lawful and required. It cites 57 Okla. Stat. § 521(A) which appears to say that, and plaintiff does not contend to the contrary. Beyond that, as noted above, the prisoner/capacity numbers for the facilities in which plaintiff was incarcerated and for the system as a whole do not violate constitutional norms regardless of how they got there.

The court concludes that Patton and Bryant are entitled to judgment as a matter of law as to the individual claims against them.

    d. <u>Intentional infliction of emotional distress</u>.

"No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without

8

a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff has made no such showing. Further, "intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 678 (6th Cir. 2005). Damages, however, may be recovered if emotional distress results from a constitutional violation. *Id.*; McClure v. Indep. Sch. Dist. No. 16, 228 F.3d 1205, 1214-15 (10th Cir. 2000). Because the court concludes no constitutional violation occurred, plaintiff has no federal claim for emotional distress.

As the court has concluded defendants prevail on the federal claims asserted in this case, it declines, as it did previously, to exercise supplemental jurisdiction over the remaining state law claims against Bryant and Patton for intentional infliction of emotion distress. Those claims will be dismissed without prejudice.

<u>Summary</u>

For the reasons stated, Plaintiff's objections to the discovery orders are **OVERRULED**. The Report is substantially adopted, consistent with the above discussion. Plaintiff's official capacity claim against the JCCC warden is **STRICKEN** as moot. Defendant's motion for summary judgment [Doc. # 111] is **GRANTED** as to the remaining federal claims. Plaintiff's state law claims are **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

Dated this 21st day of January, 2020.

JOE HEATON
UNITED STATES DISTRICT JUDGE